UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| ROWAN BROOKS, | ) Case No.: 1:11-cv-01315-LJO-JLT (HC) |
|---|---|
| Petitioner, | ) FINDINGS AND RECOMMENDATION REGARDING TIMELINESS OF PETITION |
| v. | ) |
| JAMES YATES, | ) [TWENTY-ONE DAY OBJECTION PERIOD] |
| Respondent. | ) |

This matter is before the Court to determine whether Petitioner should be entitled to equitable tolling. Upon review of the facts in this case, the Court finds that Petitioner acted diligently in his pursuit of his remedies, and the conduct of his attorney constituted an extraordinary circumstance which prevented him from timely filing his federal petition. The Court will recommend that Petitioner be granted equitable tolling and that the petition be heard on the merits.

**PROCEDURAL HISTORY**

The original petition in this case was filed on August 9, 2011 by Petitioner's then-counsel of record, Gregory H. Mitts. (Doc. 1). On August 15, 2011, after a preliminary review of the petition indicated that the petition may be untimely under federal law, the undersigned issued an order to show cause why the petition should not be dismissed as untimely, and afforded counsel thirty days within which to file a response. (Doc. 6). Mr. Mitts filed no response.

On October 20, 2011, the undersigned issued Findings and Recommendations to dismiss the

petition and gave counsel twenty days within which to file objections.  (Doc. 8).  Mr. Mitts did not file objections.  On November 22, 2011, the District Court adopted the Findings and Recommendations, entered judgment, and closed the file.  (Docs. 9 & 10).

On June 13, 2012, Petitioner, without assistance of his counsel, filed a series of documents, including a motion for relief from judgment pursuant to Fed. R. Civ. P. 60(b).  (Doc. 12).  In his motion for relief from judgment, Petitioner made a number of allegations charging Mr. Mitts with egregious negligence and ineffective assistance of counsel in failing to file a timely federal petition. Petitioner alleged, inter alia, that his family retained Mr. Mitts in March 2010 to represent him in Petitioner's habeas corpus proceedings and other related legal matters; that Mr. Mitts did not keep Petitioner and his family apprised of various rulings in state court despite Petitioner's monthly communications with Mr. Mitts; that Petitioner sent Mr. Mitts Petitioner's entire file on or about August 6, 2011 [sic]; that Mr. Mitts filed the original petition in this case on August 9, 2011; that Mr. Mitts did not communicate with Petitioner and Petitioner only learned of this Court's dismissal of the petition when Petitioner's wife discovered that fact on the internet on November 25, 2011.  (Doc. 12, pp. 5-6).  Petitioner contended that counsel's actions were negligent and entitled Petitioner to equitable tolling under federal law that would make his petition timely despite being filed beyond the one-year limitation period.

On October 5, 2012, the Court denied Petitioner's motion for relief.  (Doc. 31).  Of particular note, the Court rejected Petitioner's claim of actual innocence as well as his claim that Mr. Mitts committed gross attorney negligence in his handling of Petitioner's case, as distinct from ordinary attorney negligence.  Petitioner filed a notice of appeal in the United States Court of Appeals, Ninth Circuit, on October 22, 2012.  (Doc. 32).  On October 28, 2012, the Ninth Circuit granted a certificate of appealability as to certain issues and permitted the appeal to go forward.  (Doc. 42).

On March 28, 2016, the Ninth Circuit issued an opinion which affirmed in part and reversed in part the decision of this Court.  (Doc. 43).  The Ninth Circuit affirmed that portion of the judgment regarding actual innocence.  Brooks v. Yates, 818 F.3d 532, 533-534 (9th Cir. 2016).  However, the appellate court reversed the judgment as to whether Petitioner's counsel had abandoned him, concluding that Mitts was "grossly negligent in his representation of [Petitioner] *at the time the district*

2

*court ordered [Petitioner] to show cause why his petition should not be dismissed as untimely.*" Brooks, 818 F.3d at 534 (Emphasis supplied). On April 20, 2016, mandate issued from the Ninth Circuit. On May 9, 2016, counsel for Petitioner entered her appearance. (Doc. 46). On May 16, 2016, the Court ordered the parties to file briefs addressing the issue on remand, i.e., Petitioner's diligence. (Doc. 48). On July 7, 2016, Respondent filed his brief. (Doc. 50). On July 15, 2016, Petitioner filed his brief with attachments. (Doc. 51). Respondent conceded that Petitioner was diligent during the time he learned of the dismissal of his federal petition and prepared a motion under Rule 60(b). Therefore, on August 10, 2016, the District Court vacated the order denying the motion for relief from judgment and granted the motion. The matter was referred for a determination of whether Petitioner is entitled to equitable tolling to excuse the untimeliness of his federal petition.

On August 11, 2016, the Court granted the parties an opportunity to submit further briefing on the issue of equitable tolling. The parties each filed responses on September 26, 2016. The matter is now briefed and pending review by the Court.

## **DISCUSSION**

A. Equitable Tolling

1. Federal Standard

The running of the one-year limitation period under 28 U.S.C. § 2244(d) is subject to equitable tolling in appropriate cases. Holland v. Florida, 560 U.S. 631, 651-652 (2010); Ford v. Gonzalez, 683 F.3d 1230, 1237 (9th Cir. 2012). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Ford, 683 F.3d at 1237 (quoting Holland, 560 U.S. at 649). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." Id. (quoting Holland, 560 U.S. at 653). Equitable tolling is available "only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time and the extraordinary circumstances were the cause of [the prisoner's] untimeliness." Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003).

"Grounds for equitable tolling under § 2244(d) are 'highly fact-dependent.'" Laws v. Lamarque, 351 F.3d 919, 922 (2003) (quoting Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir.

2000) (en banc) (per curiam)). Whether a prisoner is entitled to equitable tolling under AEDPA will depend on a fact-specific inquiry by the habeas court which may be guided by "decisions made in other similar cases." Holland, 560 U.S. at 650.

Courts have found that unprofessional attorney conduct may, in some circumstances, warrant equitable tolling. Id. at 651. While a "garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline," does not warrant equitable tolling, "far more serious instances of attorney misconduct" may be so extraordinary as to warrant equitable tolling. Id. at 651-52.

2. Analysis

Respondent argues that Petitioner's attorney filed the federal petition untimely because of simple miscalculation of the deadline. Petitioner argues that the matter is not so simple, and that the totality of the circumstances in this case rise to such an egregious level that equitable tolling is warranted. The Court agrees with Petitioner and will recommend that equitable tolling be granted.

First, Petitioner was diligent in pursuing his remedies. Petitioner researched and drafted his first state habeas petition and filed it in the Kern County Superior Court approximately six months after the direct appeal process had completed. The petition was denied on October 30, 2009. He drafted a new petition and filed it in the Fifth DCA less than two months later on December 18, 2009. Anticipating a denial, he began preparing a petition to be filed in the California Supreme Court and the federal court. In March 2010, three months prior to the denial of the petition by the Fifth DCA, he completed those petitions. Around the same time, he hired attorney Gregory Mitts to represent him. He provided Mitts with his prepared petitions and advised him of the status of the ongoing state habeas process. Mitts advised him that he would handle the petition to the California Supreme Court and, once that avenue was exhausted, he would file in the Federal court. After Mitts took over the case, Petitioner did not merely sit back and let his lawyer handle his case, as others might. He attempted to stay in constant contact with his attorney by writing him letters, requesting phone calls, submitting his research and providing him with additional arguments to include with his petition. Given Petitioner's status as an inmate represented by counsel, it is unclear what more he could have done to demonstrate diligence. Therefore, the Court finds that the first prong of the test for equitable

tolling is met.

Next, Petitioner thoroughly discusses the facts surrounding Mitts' representation in his brief (Doc. No. 51, pp. 2-15), and the Court finds it unnecessary to restate them here. In his concurring opinion, Circuit Judge Kozinski wrote separately to specifically note the conduct of Petitioner's attorney. Judge Kozinski first applauded the majority's opinion's review of Mitts' dereliction of duties but then noted the severity of his misconduct by summarizing the facts as follows:

> The facts are even worse than one would gather from reading the majority opinion. After Mitts was retained in March 2010, Brooks apparently sent a letter (not in the record) suggesting how the case might be handled. In October, Mitts sent an imperious response admonishing Brooks not to "micromanage" the case from prison. The letter also mentioned offhand that the California Supreme Court had denied Brooks's pending post-conviction relief petition, but didn't say when. Nevertheless, Mitts assured Brooks that he was "aware of the time constraints attendant to" filing his federal habeas petition.
>
> That turned out to be untrue. Brooks's federal habeas deadline expired just days after Mitts wrote to Brooks, but Mitts sat on his thumbs. Over the next year, Mitts systematically ignored a stream of letters that Brooks sent inquiring about the status of his case. In May 2011, Brooks wrote to Mitts pointing out his "lack of regular communication" and asking Mitts to call him at the prison. Brooks wrote again the following month, explaining that Mitts's silence was "extremely frustrating." Having heard nothing, Brooks wrote yet again in July. To facilitate a response, Brooks enclosed questions to which Mitts could provide "yes/no" answers and brief explanations. Brooks begged Mitts to "PLEASE ANSWER THESE QUESTIONS AND MAIL THEM . . . WITHIN 2 WEEKS." Brooks continued to send letters to Mitts approximately once a month over the next four months. In August, he reminded Mitts of his responsibility to "be in contact and communicate with [your] client" and mentioned that he had been waiting "almost a year" for responses to his "11 previous letters." In October, Brooks sent Mitts an "urgent" letter imploring him to communicate, even if it meant referring him to a paralegal.
>
> In August 2011, ten months after the deadline expired, Mitts finally deigned to file a federal habeas petition, apparently without notifying Brooks. When the district court issued an order to show cause as to why the petition shouldn't be dismissed as untimely, Mitts didn't file a response or notify Brooks of the order. Mitts later explained that he did not respond to the show-cause order because he couldn't contest the court's untimeliness finding. When the magistrate judge recommended that the petition be dismissed, Mitts didn't object. The district court thus entered final judgment on a habeas petition that Brooks didn't even know had been filed on his behalf. Mitts has never explained why he missed the filing deadline by almost a year, or why he did not notify his client immediately of the default and subsequent court orders.
>
> Lawyers make mistakes, including missing deadlines. It is nothing to be proud of but it does happen from time to time and doesn't usually amount to misconduct. But lawyers have a responsibility to communicate with their clients and keep them reasonably apprised of the status of their cases. They must also notify them promptly of significant developments, which, of course, include the sinking of the case. The client can then make an informed choice whether to continue with the lawyer who caused the default or hire another lawyer who can effectively argue the first lawyer's ineptitude.

> A lawyer who comports himself as Mitts did is not only a hazard to clients, but also a menace to the profession and to the courts. Mitts's actions consumed countless hours of this court's and the district court's time in dealing with his obstinate incompetence. If Mitts was so lackadaisical in Brooks's case, we can only imagine what problems he's caused, or is likely to cause, other clients. Potential clients, who will put their lives in Mitts's hands, as Brooks did, are entitled to know that this lawyer ignores client inquiries, misses jurisdictional deadlines and does not own up to his mistakes.

Brooks v. Yates, 818 F.3d 532, 535-536 (9th Cir. 2016) (Kozinski, J., concurring).

Given the facts in this case as set forth by Petitioner and summarized in the appellate court opinion, it appears Mitts' misconduct went beyond simple negligence.  In Holland, the Supreme Court found facts similar to those in this case may well present an "'extraordinary' instance in which petitioner's attorney's conduct constituted far more than 'garden variety' or 'excusable neglect.'" 560 U.S. at 652.  The Supreme Court noted:

> To be sure, Collins failed to file Holland's petition on time and appears to have been unaware of the date on which the limitations period expired—two facts that, alone, might suggest simple negligence. But, in these circumstances, the record facts we have elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

Id.

Mitts' misconduct in this case was, at least, equal to that of Holland, appears to be a complete abandonment of his client.  In Holland, the petitioner was granted equitable tolling and his petition was reviewed on the merits.  Holland v. Tucker, 854 F.Supp.2d 1229 (S.D. Fla. 2012), *aff'd in part, rev'd in part sub nom.* Holland v. Florida, 775 F.3d 1294 (11th Cir. 2014).  Likewise here, the Court finds that Petitioner has satisfied both prongs of the test, and should be granted equitable tolling up to the point he filed his federal petition.  His petition should be considered timely filed under the statute of limitations, and Respondent should be directed to file an answer.

///

///

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that Petitioner be granted equitable tolling up to the time he filed the instant federal habeas petition, the petition be considered timely filed, and Respondent be directed to file an answer.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty-one days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **September 30, 2016**              **/s/ Jennifer L. Thurston**
                                              UNITED STATES MAGISTRATE JUDGE